We have five cases on the calendar this morning, two from the PTAB, a Veterans case, and two Claims Court cases, one of which is being submitted on the briefs and will not be argued. Our first case is from the PTAB, LG Electronics v. Advanced Microdevices, 2017-1765, Mr. Hughes. Thank you. May it please the Court. Paul Hughes for Appellant LG Electronics, and I'd like to begin with the APA issue. Our APA argument has three principal prongs. First, the Court requires the Board to state a legally sufficient basis to invalidate any patent claim. Second, the Board gave no reasoning whatsoever to support its decision to invalidate the majority of claims here. And third, this Court has repeatedly reversed the Board in identical circumstances. But still, I'm puzzled why you start out with a procedural argument instead of getting right to the merits. You've got two close references here, which one relates to supplying power to one or more circuits, and another relates to power management. And I read from your briefs that you think these are non-analogous. One is non-analogous to the other, which surprises me. Well, Your Honor, we think there is a factual question as to whether those two references are analogous that the Board did not resolve. But I think the first place— They're in the same field of handling power. Well, they're in the same field, but they deal with very different problems and have different solutions to those different problems because one is dealing with the power supply to a core, whereas another is dealing with power supply to a blocks. But we do think that the place to start with this case is for the procedural argument precisely because the Court has repeatedly reversed in identical circumstances when the Board does not provide the kind of analysis required. And I think this Court's decision in Securus is directly on point and compels reversal here. And I'd like to walk the Court through why I think that is so compelling. In Securus, the Court identified or addressed a basket of claims that had been invalidated by the PTAB, including Dependent Claims 3 and 8. There were several others, but I'll just refer to it as Claims 3 and 8. And there, the Board did exactly what the Board did here. And the Board said in its decision in Securus, quote, Petitioner contends Brown teaches or suggests limitations of each claim. It cites the petition pages 18 to 25, 28 to 32. And then the Board goes on to say that we have considered all of Pattenonor's arguments, but for reasons set forth below, we agree with Petitioner's positions. But it didn't say anything about Claims 3 or 8 at all. All it said was we agree with Petitioner's positions. That was the exact language the Court used. That's no different than this case where all the Board said for everything other than Claim 1 is we find the Petitioner's arguments persuasive. There's no daylight between labeling arguments persuasive and the Board saying it agrees with them. Can I, I want to ask you, because I understand your position. One thing that could be different is that here, the petition, as I read it, argues all the claims separately. Do you agree with that? Well, I don't think it is a distinction. I don't, I'm not. Well, let me just walk through a little bit more, and then we can talk, because I've got a kind of, I just want to ask you this question. I want to make sure you answer the right one. So as I see it, the Petitioner argues the claims separately. The preliminary response filed by LG seems to argue the claims separately. The institution decision then focused on Claim 1 and treated those other claims, 9 and the others, in a more cursory manner, perhaps putting the patent owner on notice that that's the approach that the PTO is going to take. Then the patent owner's response is filed, and it similarly focuses on Claim 1 and treats the other claims in a more cursory manner, and then there's no rehearing request. So my question is, given that background, is it kind of difficult, more difficult in this circumstance to assign error to the Board when the patent owner itself was treating the claims following the Board's lead in the institution decision, focusing on Claim 1, and then giving a more cursory treatment to the other claims, suggesting then that the reason why those other claims are likewise invalid is because they're so similar to Claim 1. You know, there are times when the Board has an analysis like that, where they might have one claim that they treat, and then the other claims kind of rise and fall with those claims. I'd like to answer that question, Your Honor, in two principal ways, and then a third way if I could get around to it. The first way is to look back to Seqirus, because I think Seqirus does address that, but then I'd like to also address that question from theoretically why we think that is not a distinction. I think Seqirus addresses that question directly, because looking at the Board's opinion in Seqirus when it deals with Dependent Claims 3 and 8, for example, it says very specifically that after institution, the patent owner specifically can test petitioner's positions regarding claims, and it says 10, 15, 19, 32, and 36, but it says nothing at all about claims, Dependent Claims 3 and 8 and a bunch of others. Are you looking at the Board's decision in Seqirus, or are you looking at this Court's decision in Seqirus, this Court's decision for why it was so holding? I'm starting with the Board's decision, Your Honor, and then I'll turn to this Court's decision. So in the Board's decision, it specifically identified that the patent owner made no independent arguments after institution as to Dependent Claims 3 and 8. It made so that's just the same situation as here. What I'm saying is it was an identical circumstance in Seqirus as to here, that the parties had— Do you know whether the petition addressed the claims individually and the parties addressed the claims individually in Seqirus? Well, I know that the patent owner did not make any individual separate arguments representing it, so what happened at the Board was identical, and I think that's the starting place, is what is the Board's decision? And the Board's decision did not address Claims 3 and 8 in any way uniquely, and this Court said it was not relevant that the patent owner had not addressed unique arguments as to Claims 3 and 8, that the Board still had an obligation. Why didn't the Court say that? Well, Your Honor, this is at the Court's decision in Seqirus. This starts at page 987, and the Court said, here the Board failed to articulate any reasoning for reaching its decision as to these claims. While the Board need not expound upon its reasoning in great detail in all cases, and we make no comment on the specific level of detail required to sufficiently address the merits of these claims in particular, it must provide some reasoned basis for finding the claims obvious in order to permit meaningful review by this Court. This is a non-presidential opinion, right? It is, Your Honor, and I think it's non-presidential precisely because the Court found itself bound by ICON Health and Nuvasiv, which required the exact same circumstance. So I think it was non-presidential precisely because by the time the Court decided this in Seqirus, it was a non-controversial proposition well established that the PTAB must make an affirmative case. And I think this goes to the fundamental principle that when the PTAB goes to invalidate a claim, there are two separate things that the Board must do. The first is it must state a sufficient affirmative case to invalidate each claim that's before it. And the Court has said that repeatedly, as I said, in ICON Health and Nuvasiv. So, for example, ICON Health quoting Nuvasiv said, the Board, quote, cannot satisfactorily make a factual finding and explain itself by merely summarizing and rejecting arguments without explaining why it accepts the prevailing argument. That's the first thing it must do, is it must state an affirmative case that's sufficient for each individual claim. The second thing, once it's done that, is it has to also respond to the patent owner's arguments. But that first obligation, as this Court relied on in Seqirus, as well as in ICON Health following up on Judge Stoll's question, your patent owner response did not make any kind of comment or defense of all of those claims other than claim one. Is that right? Yes, Your Honor, but that's the identical position as Seqirus. I think that was the problem in Seqirus. In Seqirus, we had arguments from the petitioner, then we had arguments from the patent owner, and then the Board said, we pick the petitioner's arguments, period. And they didn't explain away the patent owner's counterarguments, and that was the problem there. And compared to claim one here, that's in fact what the Board did with claim one. It identified the arguments made by the petitioner and agreed with those, but then when it came to the patent owner's counterarguments, the Board actually engaged and explained why it was the patent owner's counterarguments persuasive. So that's a distinction on both for claim one and for the non-claim one claims in this particular instance compared to Seqirus. Your Honor, respectfully, that's inaccurate as to what Seqirus did. In Seqirus, the Board was quite clear in saying the patent owner specifically made arguments as to a handful of claims, but did not include claims three or eight. The patent owner in its patent owner response did not make any unique claims as to three or eight. That's in the Board's decision at the start of page nine. And then before this Court, Global Telling, who was the appellee in that case, this was their principal argument as to that bucket of claims beginning at page 34 of their brief, where the section heading of Global Telling's brief is Seqirus did not independently argue the patentability of 16 of the listed dependent claims. Seqirus has thus waived any ability to separately argue those claims here. So that was the premise of the Board's decision, and that was the basis on which the appellee asked for affirmance in this Court was the exact same basis as that there was no independent argument made by the patent owner as to a whole series of claims, including claims three and eight. Setting Seqirus aside for a minute, what about exhaustion of remedies? And under the APA, of course, you're right that the agency has to provide notice for its decision. But also under the APA, there's an exhaustion of remedies if a party doesn't seek specific relief before the agency. And so one could potentially argue that there was an exhaustion of remedies by LG here because particular claims, claims other than claim one, weren't argued with any kind of specificity. Your Honor, the Court's been quite clear that the Board's obligation to find an affirmative case to invalidate a patent is independent of what the patent owner does. As the Court said in AQUA Products, filing a patent owner, it's optional whether a patent owner even files a response or shows up into the IPR. If a patent owner chooses not to even respond to an IPR, the Board still must state a sufficient legal basis to invalidate each claim. That's within the regulations and that's stated by AQUA Products. That is essential for the agency to do its job. As the Court said in Personal Web Technologies, Icon Health, Nuvasiv, the Board doesn't do its job unless it states a sufficient affirmative basis. Now, they don't have to go down every rabbit hole and respond to every hypothetical counter-argument, but they have to go claim by claim and show where, how they've identified. Isn't it that the PTO's explanation has to be reasonably discerned? Right? That's the standard, right? Yes, Your Honor, it has to be reasonably discerned. And I think this case is a good example of why citing 13 pages or so of a block quote, you can't reasonably discern, because for many of the limitations of these dependent claims, the petitioner made multiple arguments in the alternative. They said the voltage identification might be found in Zang. If it's not found in Zang, it might be found in Altmet. If it's not found in Altmet, it might be found in some combination of the two. The Board, by just saying we find this persuasive, doesn't tell this Court and doesn't tell the public which of these arguments it agrees with. But if you look at petition pages 29 through 40 and see that the explanation for where all the limitations are in those other claims as described in the petition, it's pretty basic. It's pretty straightforward. It's pretty close to being a follow-on to all of their arguments about claim one. And so, therefore, it is plainly reasonably discernible. Then would you agree that it would be fine for the Board in a situation like that to say, we've read petitions pages 29 through 40. We think this is pretty basic technology. We think the petition pretty clearly describes why the references meet all the limitations, and so, therefore, everything is okay here. No, Your Honor, because I think that would not be in any way different than— What more do you want? What more do you need in a situation like that? I think outdry, what the Board did in outdry, where this Court affirmed, is precisely right. Where the Board still goes through claim by claim. It's brief, but it says, claim 19, here's the limitation, and here's the piece of prior art. It's simple, but it shows that the Board is actually doing its work. It shows its work, and that is what is critical to allowing judicial review and showing that the Board has a legally sufficient basis to reach its decision. If I may reserve your time. You're well into your rebuttal time, if you want to save it. Yes, Your Honor. Thank you very much. Mr. McManus. May it please the Court. These claims directed to power management in microcircuitry are obvious. Zong and Altman were obvious. I mean, were obvious. Or would have been. Would have been. Would have been obvious at the time of the invention to one of ordinary skill in the art. Thank you. Zong and Altman tell us that. The only challenge we have here was the same, the only challenge we had below. Why would one of ordinary skill in the art have taken the limited teachings from Altman and combined it with Zong's disclosure of a way in which to control power in a core? We know why. The Board told us at Appendix Pages 10 and Appendix Pages 13 to 14. The petition told us why. The Gafford Declaration, in support of the petition, told us why. And the references tell us why. These pieces of art are in the same field. They seek to solve the same problem with the same solution. Frankly, all of these four references are all driving at the same problem. Everybody... Could you get to the procedural argument? I didn't hear the other side really talk about the merits at all. And there might be very good reasons why they carefully avoided bothering to talk about the merits. Sure. So it's really just a procedural APA case here. So could you speak to that? Of course. At the end of the day, cases like Securus outdry. They all stand for a general proposition that under the APA, the Board has to supply sufficient reasoning understandable to this Court, to the parties involved, and to the public to understand why the claims are unpatentable. There is no ambiguity in this decision about why Claim 1, or for that matter, Claims 9 through 20, are unpatentable. Where there was a dispute about a particular issue, the Board articulated both sides, explained why it was accepting one argument and why it was rejecting the other. That, for example, was limited to the motivation to combine on Claim 1. There was also a secondary argument, which they're not pursuing on appeal, that the Board did the same procedure for. But for the remainder of Claim 1, there's nothing left to talk about. Do Board judges take some kind of opinion writing class or something like that? I'm not aware that they take an opinion writing class. I do know that... I do see some variety in the way opinions from the Board get drafted, and this one seemed a little more unusual to me, in the sense that it said, we agree with the petitioner on Claim 1. Petitioner argues X, petitioner argues Y, petitioner argues Z. And it would be more comforting as a reviewing court if we saw an opinion below by the Board. If the Board wrote its analysis in a way where it felt like it was speaking through its own words, its own analysis, rather than maybe making findings, but using the petitioner's speaking through the petition, rather than speaking through its own independent analysis. It's fine if a Board decision were to say, petitioner argues this, the patent owner counters with that, we agree with the petitioner, and then actually engages in an analysis of what it finds persuasive about the petition, and then goes back on rebuttal and explains everything and why it doesn't find the patent owner's counterarguments persuasive. But that's not the kind of opinion that was written here. Well, at some level it was, and at some level it was not. Part of the reason the Board uses the approach that it used here, where, for example, on the scope and content of the prior art as it pertains to Claim 1, for example, in Zong and Olmed, the Board recites, essentially regurgitates, the presentation of the petitioner and the evidence that the petitioner has cited in its petition on those elements. And the reason it does that as opposed to, for example, it could rewrite the sentence in saying, instead of saying, petitioner argues that Olmed teaches measuring the individual usage of functional blocks. It could say, we find Olmed. Precisely. Understood. So why doesn't the Board write the opinions like that? The reason why, I don't want to speak for the Board, why this particular APJ wrote it this way, but I think the reason why you see this sort of approach is that at the end of the day, the burden of proof is on the petitioner. And so the Board is going out of its way to point out what arguments the petitioner has given us, what evidence the petitioner has marshaled in support of the unpatentability for, example, Claim 1. In the instance where, like this, where they present that in a complete recitation of what petitioner has marshaled in its petition, they then align themselves, particularly on an undisputed issue, by saying, look, that makes sense. We agree with that. That is a persuasive presentation on that particular aspect of Claim 1 and the obviousness. It is supported by credible evidence. We find it to be persuasive of obviousness. The Board then went on, to the extent that there was a dispute about part of that obviousness showing, to, again, present the counterarguments and then make the kinds of findings and conclusions that Your Honor is looking for, particularly on motivation to combine. I mean, motivation to combine is a particularly important one because, to take it back to these notice cases, when we look at cases like Icahn and Nuvasiv, typically the issue about which there is a lack of reasoning from the Board is a motivation to combine, which in the obviousness context makes sense because when we think about the particular elements of a 103 showing, that's where the reasoning really comes in. As Your Honor pointed out in questioning my friend, whether Alt-Med teaches a core or a processor, whether he teaches measuring usage, it's kind of a balls-and-strikes thing. You can look at Alt-Med and say, yeah, I see it. You point it to Alt-Med at Column 7. It's there. There's no reasoning left. But Your Honor, the Board has to say that it finds that Alt-Med teaches that limitation. It has to make that finding. It has to provide. It does. How it does that is really the debate, right? And here they have. They could do it the way that Judge Chen is looking for. They don't have to do it that way. The way they've done it here is the way that it was done in Outdry and it was done in Securus. They recited the unchallenged portion of the obviousness and said, we agree with that. It is supported by credible evidence. It is persuasive. For the purposes, again, what's driving the notice requirement and the notice cases? Do we know why this claim is unpatentable? We know why this claim is unpatentable. It's the same reason it's been unpatentable since the petition was filed. Nothing's changed. The petitioner laid it out for Claim 1. It gave you where the various elements were found in the argument. What about the claims other than Claim 1? Sure. So looking at 9 through 20, that seems to be perhaps the stronger argument being made today. And to be fair, the Board did less for 9 than it did for 1. That is in part because the dynamics here have to be accounted for. We have, as Your Honor pointed out, as this trial proceeds, it's incumbent upon the parties to make sure they're flagging the issues that really need to get the nitty-gritty analysis. Claim 1 was really the only one that anyone engaged. Claim 9 ---- Well, in the petition, in the pre-institution proceedings. Correct. Well, even more so post-institution, Your Honor. I mean, in terms of what issues the patent owner was flagging as a debate, as a dispute, there was none about Claims 9 through 13, 15, 19, and 20. Everything was about Claim 1, or more generically, the motivation to combine Altman and Zong, which covers all those claims. So to the extent that there was a dispute raised, the Board articulated both sides, gave you an analysis as to why it was accepting the prevailing argument from Petitioner and why it was rejecting the counterargument from the patent owner. But on Claim 9, there's two things going on. In an obviousness showing, we have the sort of mapping of the claim limitations to the art, and then there's that sort of narrative part of the obviousness case. Why would one of our narrow skill in the art have combined these things? Well, that narrative as it pertains to Claim 9 is the same as the narrative as it pertains to Claim 1, and the Board has expressly articulated that, frankly, twice in this decision, at pages Appendix 10 and then again at 13 and 14. So we're not in the dark about why one would have combined Zong and Altman. Altman tells you why you would combine Zong and Altman. So does Mr. Gaffer. So on the perspective of Claim 9, the other thing that's going on here, too, and Judge Chen hit on this, if you look at the petition for Claim 9, the presentation of the obviousness for Claim 9, starting on Appendix page 77, which is Petition Page 29, the first thing that Petitioner says is, quote, Claim 9 requires many of the same or similar limitations as Claim 1. Thus, the analysis of Claim 9 references, when appropriate, the analysis of Claim 1 above. And then as you go through this claim-specific, limitation by limitation, presentation on obviousness, you will continually see a reference to Section 7b-4. That is the Claim 1 argument for Zong and Altman. And if you look at Claim 9 and Claim 1, they're virtually identical. There is a very slim, narrow gap between 9 and 1. The reasons why Claim 9 is obvious and unpatentable are essentially the same reasons as Claim 1. We are not in the dark here about why Claim 9 is unpatentable. It's the same reason that's been since we started. It's in the petition. There's no dispute about it. And so to take it back to these notice cases, what cases like Securus and OutDry stand for, and at some level cases like ICON and UBASIV, where the board was sent back to the board, is where there's a dispute. You have to make sure that, as a board, you explain why you're crediting and accepting one argument and rejecting the other. To the extent we had a dispute here, the board did that. But for Claim 9, there was no dispute. The board explained with a pinpoint accuracy incorporating by reference the portion of the petition where the explanation and the reasoning for Claim 9 and its obviousness is. That is consistent with OutDry. That is consistent with Securus. And it's consistent with ICON, at least to the extent that ICON affirmed one of the portions of the board decision there. Do you agree with the characterization of Securus being made by opposing counsel about how, in that case, the claims, I guess, that were summarily discussed by the board were only summarily discussed in the proceedings by the patent owner? No. Securus supports us. I mean, in Securus, you actually sort of have a juxtaposition of what passes notice muster and what does not. And when we look at Securus, the analysis that was deemed sufficient is similar to the analysis that was deemed sufficient here. And that's in Securus at page 986. The court explained, as respected with Claim 6, for example, the board recounted the party's arguments, identified the specific portion of the petition informing the board's decision, and explained why it found Securus's argument unpersuasive. Here, we don't even have the need to do the second part, which is to explain why Securus's arguments are unpersuasive for Claim 9, because we don't have any arguments from LGE on Claim 9. They didn't make any claim-specific arguments. So the board — and the corollary to this is we know that it's permissible for the board to incorporate arguments and evidence by reference. So instead of regurgitating the uncontested argument here, for example, on Claim 9 in LGE, it has simply given you a pinpoint citation to where that argument is. And this idea that Claim 9 is replete with alternatives, whether that's true or not, that is not unto itself error. Zong and Alt-Med can both teach a claim limitation. When you read the presentation for Claim 9, it's readily understandable. You can go and look at the citations to Zong and to Alt-Med. You can go and look at the citations to the Gaffer Declaration, where he gives you the person of ordinary skill's perspective on that disclosure and readily understand why Claim 9 is determined to be obvious. That wholly comports with the APA and this Court's notice case law. If there are no further questions, I'll yield my time. Thank you, Mr. Harris. No one ever loses points by not using up all this time.  Thank you, Your Honor. This case addresses whether or not the Board can use simple boilerplate language in every case. Here, we know they use boilerplate because for Ground 2, the Board cited the wrong page range. And the Patent Office's view is even though they cited the wrong page range, we can assume that all they meant to do was incorporate the petition wholesale by reference. But cases like OutDry and Securus and all the other cases say it's not enough simply to point to the petition in bulk. The Patent Office has to give specific reasons why it incorporates it, why it finds it persuasive. So again, it's not enough for the Board to respond to the arguments that the patent owner makes, the arguments that, as my opponent said, that the patent owner flags. Rather, every case this Court has decided says the Board first, regardless of what the patent owner does, must state an affirmative case. It can be short, but it needs to state an affirmative basis on which it has found a case to evaluate. If the affirmative basis can't be, we adopt the petition pages 10 through 15? I think in cases like OutDry and others, the Court has said, no, it's not enough simply to incorporate by reference without saying what it is that the Court's incorporating. It certainly can incorporate, but you have to say, we agree that it's this reference and we find that persuasive for this reason. That's what's required. Certainly, you can use incorporation if it has those specifics. But what one cannot do is cite the entirety of a petition or the entire page, the whole block range of the petition, especially when there are multiple arguments in the alternative, as there are here, where it's impossible to tell what it is that the Board actually found persuasive as opposed to what they're not. That's essential, as this Court has repeatedly said, for the Board to actually do its job, to enable appellate review and to show the public that before it invalidates patent claims, it is in fact doing its work and going through on a claim-by-claim basis. And just to conclude, I think the Court's historical cases strongly support us on this point. I think Seqirus is, as we've said, I'd urge the Court to look at claims 3 and 8 of Seqirus. I think there's absolutely no daylight between what happened in claims 3 of 8 of Seqirus and the claims at issue here. Thank you. Thank you, counsel. We'll take the case under advisement.